Good morning. Good morning, William. May it please the Court, my name is Robert Arleo. I am counsel for John Dunlap, appellant in this matter. This matter was brought under the Fair Debt Collection Practices Act, and a simple, straight issue is whether or not the name Credit Protection Association, used by a company which is the true name Eaton Industries, in and of itself carries the implication that the failure to pay a de minimis debt may invoke credit ramifications. As the Court may know, the FDCPA is a strict liability statute. One violation is sufficient to establish liability, and this Court has held that there should be a broad interpretation of what constitutes deception under the Fair Debt Collection Practices Act. Well, do you get the deception simply because of the use of credit, the word credit? I would say Credit Protection Association, the combination of credit protection, the glean from the consumer. And I've passed this letter to numerous people, and if you ask them the one question That's not in the record, counsel. Excuse me? That's not in the record. Well, my argument You know, your ad hoc evidentiary offer seems a little Oh, then withdraw. Accord, isn't it? Then we have to go on what's in the letter? Then withdraw. I would argue, then, a review of the letter asking the simple question, if you don't pay this de minimis debt, would there be any ramifications? And based upon the name Credit Protection Association, from a 12 judgment on the pleadings issue, clearly there is enough of a possibility that the least sophisticated consumer could feel threatened by the very name. In the Illinois cases that you rely on, was the same name used? Yes. So, but they didn't rely on the name, did they? They relied more on the content and implications of the letter, didn't they, the body of the letter? Well, in the Arellano case, also alleged that the name Credit Protection Association Was alleged, but what did the court find? Well, the court certified a class settlement agreement in that matter. But we don't have a ruling. Well, the letter there was quite different because it actually threatened reference to an attorney. That's correct. And this letter has no threat, explicit threat, at all. So you've got to infer it entirely. Correct. You've got to imply the threat, and the implication of a threat is good enough under the Fair Debt Collection Act. I think you mean you want the recipient to infer the threat. Correct. That the implication of the letter. Now, as I traveled to You want to imply it, but you Want someone else to infer it. You want somebody else to infer it. Well, the least sophisticated consumer, that's the argument, and that's the standard. As I came here, I pull out today grass from Sagamore Hill. And Sagamore Hill, Illinois, is the home of Theodore Roosevelt. And how does one end up on a mountain in South Dakota? You look at something, and you call it as you see it. Clearly, Eaton Industries. Why don't you send the letter under the name Eaton Industries? Why? Because you want to have Credit Protection Association. But right under it, it says a nationwide collection company. Yes. And that's the point. They're relying upon that, and Judge Moskowitz relied upon that. But that does not Maybe I will, too. Well, I hope not, but maybe you will. The implication, whether or not they're a collection agency, is not relevant to the argument. Collection agencies report debts to credit reporting agencies. And because they are a debt collector, it does not negate the argument. They, in and of itself, as a collection agency, could report to a credit reporting bureau. Where in the letter, besides the name, does it suggest they're going to report anything? I travel here on the name only, Your Honor. Well. So nothing in the letter itself says that they're going to report. Nothing in the letter is I take it if one does, in fact, adopt the habit of paying one's debt, it does tend to protect one's credit. In the general concept. In the general concept, but under the FDCPA, and as I told Judge Glasser, the underlying debt, whether it existed or not, and whether the consumer paid it or not, is not relevant to whether or not the FDCPA was violated. I understand that. So from the, and again, here, if I had, I believe, had a juror, I can convince them on the merits. But for a judgment on the pleadings to say that no least sophisticated consumer could glean that is not a correct holding with all due respect to the Court. Now, the issue of those cases that I cited in the Federal Trade Commission and the reliance on those, the appellee has alleged that they're not relevant. However, this Court has relied upon Federal Trade Commission holdings and rulings and recognized that the collection people there describe themselves quite differently. I mean, here you had Credit Bureau or something of that sort, which did imply that, in fact, those folks were a reporting agency and that credit would be damaged by them. Here, I mean, it's just the word credit, right? No, credit protection. Credit Protection Association. Protect your credit and pay the bill. Well, yeah, so. But. So it's true. Well, it's not true. I mean, it's absolutely true. No, well, it's not true because the amount of the debt would not be reported. If this was a $500 debt, I would say, yes, it would be reported to a credit reported bureau, and I'm not standing here. But because of the amount of the debt, the de minimis amount that would not be reported to the credit reporting agency, that's the argument. If it was true, if it would be reported, then there is no violation. But because of the $12 debt that's not going to be reported, that's the violation. Okay. Reserve some time for reading. Surely. Mr. Turner. Good morning. Stephen Turner for Credit Protection Association. In reflecting upon the issue before the Court here today, I came to my, I came to the conclusion that the issue was, what comes to mind when someone hears the words Credit Protection Association? You better pay your debt. Right? Well, but what comes, if in fact, Your Honor, you simply had, and the appellant is not here today on the basis of an envelope which on the outside had only the words Credit Protection Association. Those words in and of themselves in isolation are not the basis of the appellant's appeal. And so those words might bring up lots of things to mind, but one thing which does not come to mind is that this is a debt collector which is going to report a debt. So it's appellant's position that the use of the word Credit Protection Association in conjunction with the totality of the letter, the demand letter, in which five times it stated that Credit Protection Association is a debt collector, somehow implies that this de minimis debt is going to be reported to credit reporting bureaus, despite the fact that there is no such threat, no such explicit threat within the letter. But in fact, plaintiff's position is really broader than that, and I think it quite candidly reflects the weakness of the position. Appellant states in its opening brief at page 11, lines 24, over to page 12, lines 4, in granting the defendant's motion for judgment on the pleadings, the district court relied heavily upon the fact that the letter at issue herein states that the debt is a debt collector, that the defendant, excuse me, is a debt collector, and therefore there are no issues concerning credit reporting. However, it is common knowledge that debt collection agencies typically report alleged joint with debts to the major credit bureaus. If in fact that is correct, and that appears to be plaintiff's position, the appellant's position, then the name becomes irrelevant. Any letter from any agency regarding this debt would constitute a violation of the FDCPA. If the Steve Turner Collection Agency sent out this letter, a letter in question to the debtor seeking to recover the debt on behalf of Blockbuster, that would constitute a violation because it was, according to the plaintiff, common knowledge that debt collection agencies typically report alleged joint with debts. Well, yeah. I think he's really focusing and arguing by analogy from other cases where the word credit has been used in connection with credit bureau or credit, I've forgotten what the word, circulation credit bureau and things of that sort, that the use of the word credit in conjunction with protecting it implies that there's a threat of reporting. Clearly that is, that it seems to be the thrust of the appellant's position, and yet they seem to expand it, but there would be no reason to limit it, to limit this argument to credit protection association. Well, I suppose one could just say you can't use the word credit. Use your name, Smith Collection Agency, or whatever it is. It in fact is their DBA. Well, I understand, and I think his argument is that there must be some reason for using a DBA. If your name is Smith Collection Agency or Blockbuster, and you gin up a name called credit protection association, it must be for some purpose, and that purpose, in his view, is to imply that you're going to go after the guy. That clearly is the appellant's position, Your Honor. What's wrong with it? What's wrong with the position is that there is no implication in those, with the words credit protection. Credit protection? Credit protection. That's a neutral term? I would not say that it is a neutral term. How about home protection? What would you consider home protection to imply? I would assume that home protection would be something which is going to protect my home. Right. So how do you protect your credit? One pays one's bills. Right. I thought I said that right at the outset. No, no. Yes, indeed you did, Your Honor. But I would respond, if I might, just a bit further. It says protect your bills, pay your bills, but it does not say, credit protection association does not say, we're going to report it to the credit reporting bureaus. That's the leap that cannot be made. It was not made at the district court level, and I don't believe it can be made here. My point, which I don't think I made very well, was that why do we limit it to the name, however, if in fact, as according to plaintiff contends, it is common knowledge that a collection agency reports to credit reporting bureaus. If that is in fact their position, any letter from any collection agency with any name, this letter from a collection agency with any name would violate the FDCPA because the mere fact that the Steve Turner or Robert Arleo collection agency sent the letter seeking to recover a de minimis debt would imply that it's going to be reported because it's common knowledge. Well, is your position that you don't have to have any kind of, excuse me, is your position that you do have to have an implicit threat in order for it to violate the act? I, well, speaking hypothetically, one can imagine a situation in which perhaps, no. So my position is not that. To answer your question more directly. So you agree that you can have an implicit threat? Yes, if I might elaborate for a moment on that. If the name were debt reporting agency, one conceivably might. Well, yeah, but we've said credit, or courts have said credit protection, excuse me, credit, anything with credit bureau in it suffices. So the question is, is credit protection sufficiently different from credit bureau in the absence of a threat? Certain, yes. My short answer would be yes. I'm not aware of any legal authority for the position. Well, yes, but we can sure create some. No question, Your Honor, hence I'm here today. I understand that entirely, Your Honor. I didn't mean to imply you couldn't. But certainly there is none, there is none presently. Credit protection association, one then suddenly, one makes the leap that this is going to be reported. Well, why, I guess I find myself, I simply don't make, I'm unaware of any authority for that position. A credit bureau might imply something else, although the cases using the word credit bureau have dealt with misrepresentation of a relationship between the cases of which I'm aware, Your Honor. Well, let me just ask you something. Is your position that you've got to look at the whole letter rather than just the name, and you've got to look and see whether the whole letter makes it clear that it's just a collection agency or whether the whole letter includes an explicit threat which, in combination with the name, can then imply that there's going to be a reporting? My response, which I hope is direct, is that the Court needs to look at the entire letter, this entire letter, to ascertain whether or not there is an implied threat from the body of the letter with the use of the word credit protection association. I hope that was direct response. Okay. I get it. Now, you said that you agreed that protect credit means pay your bill, but you didn't want to make the leap to reporting to somebody. Well, protect credit by paying your bill to Blockbuster may protect your future credit with Blockbuster, but why doesn't it imply some notion that your credit record is out there and that if you don't pay this bill, your record generally, not just as to Blockbuster, will be damaged? Certainly, I think, Your Honor, if you look at the totality of the letter in which there is, unlike the letter in EAPS, as was previously pointed out, in which there was this threat to seek recommendation to report to the credit bureau, the totality of the letter, credit protection association, my position simply would be that this is an idiosyncratic interpretation of the language to find that a least sophisticated consumer would be misled by that. You don't think it's a permissible inference for somebody to get a letter like that and think that they need to pay it to protect their general credit reputation? No, I don't think that that is a permissible inference from that, Your Honor, any more than if it came from, a letter came from any other agency with any other name in which the ACME debt collection agency says, please pay your debt, pay your debt, or pay your debt, perhaps didn't say please. I don't believe there's any more likely violation, any more violation of FDCP under that circumstance, and I've run out of time. Okay. Mr. Alia. Just very quickly, again, I'd like to reassert whether or not there were a debt collection agency is not relevant because collection agencies can report debts. If it was the Stephen Turner Collection Agency or the Robert Arliel Collection Agency, I'm not standing here today. I would agree with Mr. Turner, but that's not the fact. And very importantly, for a judgment on the pleading to be granted, there has to be no cognizable legal theory. Here, there is a cognizable legal theory from the least sophisticated consumer's perspective. I presented a theory. I presented an argument. They've already been held liable for doing it before in other cases. Not on these facts. In fact, the footnote in that case, footnote 8, specifically rejects the argument you're trying to make. In which case, Your Honor?  I'm not trying to make the argument that they're a credit reporting agency. EAPS case. EAPS case. I'm not trying to make the argument that they are a credit reporting bureau. EAPS also asserts the CPA's name as itself violates the FDCPA. We find that the name credit protection agency, when used in conjunction with the disclaimer that it is seeking to collect a debt and that information obtained will be used for that purpose, and when used in a letter that could not lead an unsophisticated consumer to believe that it was offering assistance, does not violate the FDCPA. You said you traveled here on the name only. On the name only. Now, that was the holding in the EAPS case? Yeah. Which EAPS? The industry case? Well, if that's the holding, I misread it, and if it is, I would. Footnote 8. I just read footnote 8. Footnote 8 in whose argument? D-Town Industry. In their opposition? EPA Credit Protection Association. Well, I would disagree with that. The name in and of itself. Well, I wasn't on it. The name in and of itself, and again, for judgment on the pleading issues to say that there's no legal theory here is patently incorrect. I think on that standard, the decision should be reversed and remanded. And thank you very much. Thank you. Thank you, counsel. The matter just argued will be submitted.
judges: B. Fletcher, Rymer, Fisher